Norman SCHULER and Grace J. Schuler, Plaintiffs, Appellants,

v.

POLAROID CORPORATION, Defendant, Appellee.

No. 87–1895.

United States Court of Appeals, First Circuit.

Heard March 11, 1988.

Decided May 24, 1988.

Rehearing Denied June 21, 1988.

---

Edward F. Haber, P.C. with whom John J. Barter, Boston, Mass., was on brief for plaintiffs, appellants.

Kevin J. Fitzgerald, with whom Sandra L. Lynch and Foley, Hoag & Eliot, Boston, Mass., were on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Norman and Grace Schuler sued Polaroid Corporation claiming that Polaroid violated federal and state 'age discrimination' laws, 29 U.S.C. §§ 621–634 (1982); Mass.Gen.L. ch. 151B, §§ 1–10 (1986) by "constructively discharging" Norman in the summer of 1985. The district court granted Polaroid's motion for summary judgment; the Schulers appeal; we affirm. The questions presented are all evidentiary. Did the Schulers bring to the district court's attention enough evidence to show "genuine" and "material" issues of fact, evidence that would have legally permitted a jury to find in their favor? Fed.R.Civ.P. 56(c). After reading the record (insofar as the appendix contains it), we conclude that the evidence the Schulers offered was insufficient.

The Schulers' claim arises out of the following basic facts: (1) In 1985, Norman Schuler, then 57, was Polarizer Research Manager at Polaroid; he had worked for Polaroid for 33 years; his supervisors had

consistently given him good performance ratings. (2) In April 1985, Polaroid announced a company-wide reorganization designed to help reverse a trend of declining profits; Polaroid intended to reduce its salaried work force by 400 employees; Polaroid developed a severance plan (PSP) that offered up to 2½ years' severance pay to select employees as an incentive to resign; the plan offered greater benefits to those with more seniority. (3) Polaroid effectively abolished Schuler's job; Schuler's supervisor, Stewart Bennett, encouraged him to take advantage of PSP. (4) When Schuler said he preferred to remain at Polaroid, Bennett then offered him the position of "Polarizer Information Specialist," a position Schuler considered far inferior to his former position (though pay and benefits were the same). (5) After repeated urging by Bennett, Schuler decided to accept the severance plan and leave Polaroid; he then brought this suit charging that Polaroid in effect forced him to leave because of his age.

At the outset, we note that Schuler cannot base his 'age discrimination' claim upon the attractive terms that the severance plan offered. That plan was a carrot, not a stick, and for reasons the Seventh Circuit has set forth in *Henn v. National Geographic Society*, 819 F.2d 824, *cert. denied*, — U.S. —, 108 S.Ct. 454, 98 L.Ed. 2d 394 (1987), a 'carrot' cannot ordinarily violate the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1982); that act does not forbid treating older persons *more* generously than others. *See Bodnar v. Synpol, Inc.*, 843 F.2d 190 (5th Cir.1988); *Gray v. New England Telephone and Telegraph Co.*, 792 F.2d 251, 255 (1st Cir.1986). Rather, the issue is, severance plan aside, did Polaroid treat Schuler *less* favorably than it did others? Did it force him to resign by abolishing his job and demoting him, and did it do so on account of his age? *See Henn, supra; Bodnar, supra; Gray, supra.* The district court believed that Schuler could not prove that the 'demotion' was unattractive enough to have *forced* Schuler to resign from Polaroid. *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.

1986); *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977). We affirm its judgment on the alternative ground, suggested by the district court and briefed by the parties, that the Schulers are unable to show age discrimination.

This circuit has held that to make out a prima facie case of age discrimination in a reduction in force case, a plaintiff like Schuler must show "that (1) he was in the protected age group; (2) he was performing his job at a level that met his employer's legitimate expectation; (3) he was fired [actually or constructively]; and (4) the employer did not treat age neutrally or that younger persons were retained in the same position." *Holt v. Gamewell Corp.*, 797 F.2d 36, 37–38 (1st Cir.1986). In addition, if the employer offers evidence showing an age-neutral reason for discharge, an employee like Schuler must show the employer's reason was a pretext. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011–19 (1st Cir. 1979); *cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (Title VII context). Schuler's evidence here cannot show either.

■ a. Schuler cannot show that Polaroid failed to "treat age neutrally or that younger persons were retained in the same position" in part because he was not replaced by a younger person; rather, his position was effectively abolished. Bennett stated in his affidavit that when the Polarizer Division, which he ran, was reorganized "the position of Manager of Research and Development ceased to exist and most of the duties previously performed by Norman Schuler ceased to be performed. Dr. Len Polizzotto [who took over Schuler's responsibilities] devoted only a very small percentage of his time—perhaps 5%—to work previously performed by Mr. Schuler." Schuler testified in his own deposition that Polizzotto took over "all" his responsibilities, but he supported that conclusion only by referring to "memorandums outlining agendas of meetings where he took responsibility," memoranda that are not in the record before us. Schuler immediately added that he had not "the slight[est] idea" of what percentage of Pol-

izzotto's time was spent performing Schuler's former duties. Schuler's statements, therefore, do not directly contradict Bennett's. They are insufficient to permit a jury to find that Polaroid did *not* abolish the job but rather "retained" a younger person "in the same position." *Holt, supra.*

 Nor can we find Schuler's evidence, as he presents it, sufficient to show that Polaroid failed to "treat age neutrally." Schuler here relies on the fact that Bennett also eliminated the positions of John McGonagle, age 54; Robert Rizzotto, age 52, and Robert Albertazzi, age 44. But the simple fact that Bennett abolished jobs held by three other middle-aged men (3, 5, and 13 years younger than Schuler) does not permit a fact finder to conclude that Polaroid failed to administer its reorganization (potentially affecting 400 employees) neutrally. "The fact that a neutral discharge policy has an adverse effect on a single employee or even a few employees does not itself create such a prima facie case" of discrimination. *Holt,* 797 F.2d at 38; *accord Massarsky v. General Motors Corp.,* 706 F.2d 111, 121 (3d Cir.1983). Schuler points to nothing about the size of the pool of potentially affected employees, the age or kind of employee likely in the pool, the nature of the work force at Polaroid or in the Polarizer Division, or the way in which these employees were treated that would permit a fact finder to find actionable age discrimination. *See, e.g., Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 942–44 (6th Cir.1987); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 465 (7th Cir.1986). Schuler seeks to bolster his evidence here by pointing out that three other Polarizer Division employees accepted PSP and left about the same time he did, but he concedes that one of them, John McMullen, age 40, intended to leave regardless; the second, James Racich, 35, left because of performance problems; and the third, Esther Simonini, 55, asked to take advantage of PSP. Schuler adds that eight years earlier Bennett pressured two older employees, Warren Nettleson and Ken Madure, to leave, but Schuler supplies no details. Even if we add these last two examples, Schuler's statistical evidence is too weak and these facts too few (even adding in Schuler's conclusory statements) to permit a jury rationally to find that Polaroid discriminated on the basis of age even had Polaroid introduced no evidence other than that previously mentioned. *See Simpson, supra; Dale, supra; see also Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974) (noting in a racial discrimination context that a statistical sample of 13 was too small to permit any significant conclusions about discrimination).

 b. In fact, Polaroid produced additional evidence tending to show that it abolished Schuler's job and offered him another for a legitimate, age-neutral reason. Bennett said in his affidavit:

> It was my decision to reorganize the Polarizer Division as part of a generalized corporate effort to cut costs; to eliminate Mr. Schuler's position as Manager of Research and Development; and to make Mr. Schuler eligible for voluntary participation in the Polaroid Severance Plan. This decision was based upon evaluation of Mr. Schuler's abilities as a research manager and the needs of the Polarizer Division. In particular I was not satisfied with the results of the various research projects for which Mr. Schuler had been responsible. This decision was in no way based on Mr. Schuler's age.

Schuler's previous performance evaluations offer some support for this statement, for while they gave Schuler high ratings for his research performance, they expressed disappointment in the results. In 1979, for example, Schuler's former supervisor rated Schuler's performance as "outstanding," but added that "we expressed our mutual disappointment that several of the research projects had not progressed as rapidly as we would have wished." In 1981, Bennett rated Schuler's performance as "excellent," but added that "[t]he difference between your [Schuler's] performance and one I could call outstanding lies in the realm of how much input is required to get an output. For the amount of cost in personnel

and facilities put into Polarizer research, I do not think the output is outstanding."

Schuler's efforts to show this reason a "pretext," *see Loeb*, 600 F.2d at 1011–19; *cf. McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825, consist entirely of pointing to the facts that his ratings were good, reiterating his points about the others whose jobs were abolished, and saying that a jury might disbelieve Bennett. But the first of these efforts misses the point. Bennett's reason rested on the value to the company of Schuler's *results*, not his dedication or competence. The second is inadequate to show "pretext" for the reasons mentioned above. And the third runs counter to our finding in *White v. Vathally* that "[m]erely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent." 732 F.2d 1037, 1042 (1st Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 531, 83 L.Ed.2d 267 (1984); *see Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987); *Gray v. New England Telephone & Telegraph Co.*, 792 F.2d 251, 255 (1st Cir.1986).

■ 3. Schuler's complaint also raised a state-law contract claim, a claim in respect to which the district court also entered summary judgment for Polaroid. Schuler said that Polaroid had violated contractual promises made to him guaranteeing him a job. For the most part these promises, he says, can be found in Polaroid Personnel Policy Document PP–251, which reads as follows:

When possible we intend to place excess members with 10 or more years seniority in a job which maintains their current grade and content level, and which is as satisfactory as possible to the member....

[Such a person]

(a) ... will normally be placed within the present division in a job for which he/she is qualified and which is similar in content and equal in grade to his/her current job.

(b) [or, if not,] ... within the Group [in such a job]....

(c) [or, if not,] within the company [in such a job]....

(d) [or, if not, and the member] therefore must be reduced in level, [doing so] will be the placement responsibility of the present Division Manager [subject to review by a committee of corporate officers].

The district court decided that a reasonable fact finder could not conclude that Polaroid broke this contract, and we agree.

For one thing, Polaroid offered Schuler a "job similar in ... grade." And Polaroid points to some evidence suggesting it was also "similar in content"—or at least as "similar in content" as was reasonably available. Bennett wrote to Schuler stating that his new job, "Polarizer Information Specialist," would carry his current pay. He added that Schuler's duties in the new job would be "to inspect and evaluate all relevant technical and marketing information for the purpose of making well-reasoned recommendations on future activities to Division management." Bennett provided a non-exhaustive list of "specific examples of areas where information is available and is not now being systematically weighed and evaluated," such as "improved adhesive technologies for laminates.... [o]ffice ergonomics.... [s]unglass markets for new products.... [and] [b]irefringence and its minimization." Bennett said he expected that Schuler would "obtain information principally from the library, with some admixture of personal contact and technical show visits." He offered "secretarial support" and a new office.

In response, Schuler argued that the job was make-work. He pointed to (1) statements by various division members that they already could get the new technology information they needed from the library, so they (or some of them) would not "support" the creation of the new job; (2) his own conclusions that the job lacked substance; and (3) Schuler's report that Bennett, during a conversation in which he urged Schuler to accept PSP, said "there was no substance to the [new] job." To be specific, Schuler said in his deposition that Bennett "said that if the job had any substance, he would have recommended it in

the first place ... [, but] [h]e was obliged under 251 [Polaroid's job security program] to offer me a position."

The first of these points supports Schuler, but only a very little. As Bennett's memorandum and affidavit presented the job, its challenge was not to replicate library research, but to turn that research into recommendations of practical utility to the Division. That others in the Division, according to Schuler, found it unlikely that Schuler could succeed in this endeavor does *not* show the job was make-work. The second point, Schuler's conclusion, is phrased too generally to be useful. The third point, however, could become significant if the case went to trial and the jury believed Schuler. But we still do not see how a jury could conclude that Polaroid violated its personnel policy statement (assuming, for the sake of argument, that the policy statement constituted a contract). The policy statement says that *"normally"* and "when possible," Polaroid will find the employee a job of "similar content" as well as of "similar grade." Schuler has provided no evidence at all that other, better jobs were available, or that Bennett could have found one. Nor (as we pointed out above) has he presented evidence that would permit a jury to conclude that the abolition of his own job flowed from other than legitimate business considerations. We therefore agree with the district court that summary judgment was properly entered for defendant on the contract question.

In respect to the other issues appellant raises, we also believe the district court resolved them correctly for the reasons set forth in that court's opinion.

The judgment of the district court is

*Affirmed.*

MEMORANDUM AND ORDER

The district court found that the plaintiff could not show that Dr. Bennett's negative rating, even if 'retaliatory,' caused him harm. Since plaintiff's right is basically one not to be *harmed* for retaliatory reasons, it is unlikely that plaintiff is entitled to even nominal damages. *Cf. Magnett v. Pelletier,* 488 F.2d 33, 35 (1st Cir.1973) (plaintiff *is* entitled to nominal damages once police violate right to be secure in home but do not cause *other* damage). The district court did not discuss the "nominal damages" question, however, because plaintiffs did not raise it in their opposition to defendant's summary judgment motion, a motion that gave as a conclusive reason for dismissing the "retaliation claim," the fact that "there is no evidence that Schuler was harmed by the evaluation." That being so, the plaintiffs cannot raise the issue on appeal. *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979).

The petition for rehearing is denied.