**Hugo V. OLIVERA, Plaintiff,**

v.

**NESTLE–PUERTO RICO, INC., Defendant.**

**Civ. No. 88–0898(PG).**

United States District Court, D. Puerto Rico.

March 14, 1990.

James E. Toro, Santurce, P.R., for plaintiff.

José A. Silva Cofresí, San Juan, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

This is an action brought under the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. §§ 621–634, wherein the plaintiff claims that defendant Nestle–Puerto Rico, Inc., (hereinafter "NPR") terminated his employment because of his age. In addition to the ADEA claim, plaintiff's complaint also contains pendent claims of age discrimination under Puerto Rico law. The defendant moved for summary judgment. Plaintiff filed his opposition thereto.

A court shall enter summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

After examining the pleadings, affidavits and exhibits, the record in this case reveals there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.

### Findings of Fact

The plaintiff, Hugo V. Olivera, commenced employment with NPR in March of 1982 as Marketing Manager. In November 1983 plaintiff was promoted to the position of General Sales Manager. He remained in that position until his employment was terminated on November 16, 1987.

### Conclusions of Law

As stated by the U.S. Court of Appeals for the First Circuit:

1. In the First Circuit Court of Appeals an ADEA plaintiff need not show that he was replaced by a younger person or person outside the protected age group to make his *prima facie* case.

The central issue in an action brought under the ADEA is "whether or not plaintiff was discharged 'because of his age,'" that is that plaintiff's age "was the 'determining factor' in his discharge in the sense that, 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1017, 1019 (1st Cir.1979). *See also, e.g., Menard [v. First Security Services Corp.,]* 848 F.2d [281] at 285 [ (1st Cir.1988) ]. In order to prove a claim of age discrimination, an ADEA plaintiff must first establish a *prima facie* case of discrimination, thereby creating a rebuttable presumption that the civil rights violation complained of indeed occurred. In order to make out this *prima facie* case, (footnote omitted) a plaintiff must demonstrate by a preponderance of the evidence that:

1. he was within the protected age group, that is, 40–70 years of age; (footnote omitted)

2. he was fired (actually or constructively); (footnote omitted)

3. he was qualified for the job that he was fired from, in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative; and

4. he was replaced by someone with qualifications similar to his own, thus demonstrating a continued need for the same services and skills.[1]

Once an ADEA plaintiff has established his *prima facie* case, it is for the defendant to rebut the inference of age discrimination that has arisen by articulating legitimate, non-discriminatory reasons for acting as it did. If the defendant succeeds with its rebuttal, the initial presumption of age discrimination is dissolved and plaintiff must respond by showing that the reasons presented by the defendant are merely pretextual....

*Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1110, n. 10 (1st Cir.1989), *citing Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1335 (1st Cir.1988).

[T]he burden remains on the plaintiff throughout the action to persuade the finder of fact that he was indeed discharged because of his age.

*Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1110–1111 (1st Cir.1989).

In the context of a summary judgment proceeding, the First Circuit has explained that "merely making out a *prima facie* case does not automatically save appellant from a summary judgment motion." *Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987). In order to avoid summary judgment, "an ADEA plaintiff must 'indicat[e] what he would prove to show that the defendant['s] explanation was a mere pretext' once the defendant has articulated a legitimate, nondiscriminatory reason that rebuts plaintiff's initial showing that a genuine issue exists as to the material fact that the plaintiff was discharged because of age discrimination." *Hebert*, 872 F.2d at 1111, *quoting, Dea*, 810 F.2d at 16.

■ With this legal background, we now turn to an examination of Olivera's case. First, we must determine whether Olivera makes out a *prima facie* case of age discrimination. There is no doubt that Olivera was within the protected age group and that he was fired. There is an affidavit of Mr. Jesús T. Perry, Vice President of Human Resources for NPR, wherein he states that Mr. Olivera was not replaced with a younger executive, that NPR divided up his job among the four sales representatives over the age of forty who previously reported to him. (Defendant's Exhibit C). However, plaintiff submitted a sworn statement by the former product manager of NPR, Guillermo Santiago Vázquez, which contradicts Mr. Perry's above assertion. Mr. Santiago recalls a memorandum signed by Mr. Perry which had been placed on NPR's official bulletin board and which read that Mr. Olivera was no longer working for the company and that all personnel previously reporting to Mr. Olivera will now be reporting to Felipe Silva, who will be assuming his functions. Mr. Silva was

NPR's Vice–President for Sales and Marketing, who at the time of Olivera's firing was 37 or 38 years of age. Mr. Santiago further stated that from the date of the memorandum through the date he resigned he was able to observe that Mr. Olivera's duties and functions were being in fact discharged by Mr. Silva, and the clerical functions were being delegated by Mr. Silva to division sales managers. (Plaintiff's Exhibit 10). Nor can there be any doubt that Olivera produced enough evidence of the fact that he was qualified for his job as General Sales Manager.[2] Olivera has established his *prima facie* case.

■ We turn next to NPR's articulated nondiscriminatory reasons for terminating Olivera and the evidence that Olivera produced to raise a genuine issue that NPR's alleged reasons were but a pretext for age discrimination.

To rebut Olivera's inference of age discrimination, NPR articulates as nondiscriminatory reason for its action, that as a result of four reported incidents of alleged indiscretion by Olivera, NPR's President, Mr. Eugene Prince, lost the confidence necessary for Olivera to continue as a senior member of the management of the company. The four incidents which led to the alleged erosion of confidence in Olivera are:

1. the reported advance disclosure by Olivera of NPR's confidential reduction-in-force plans;

2. the critical comments made by Olivera concerning NPR's corporate management in White Plains, New York, out of NPR chain of command, without attempting to discuss or resolve the issue internally at NPR;

3. the disclosure allegedly made by Olivera to a Nestle, S.A., auditor regarding NPR's irregular accounting practices and NPR president's kickbacks from a corned beef supplier; and

**2.** Plaintiff submitted evidence such as positive job performance appraisals, periodic raises in salary and fringe benefits, invitation to an "ap-

preciation dinner" and selection to participate in NPR's Management Incentive Plan.

4. comments made by Olivera to a NPR's corned beef supplier about NPR's president's retirement.

■ Having lost the benefit of the presumption of discrimination raised by plaintiff's *prima facie* case, Olivera was required to show, unaided by the initial inference, that NPR's stated reasons were but a pretext for age discrimination.

Olivera argued that NPR's claim of erosion of confidence in him is just a pretext to cover up the real reason for his firing, which is his age. He offered countervailing evidence documenting his employment history with Nestle. He worked in a Nestle subsidiary for eleven years prior to his employment with NPR. In March 1982 he was hired by NPR as marketing manager. In November 1983 plaintiff was promoted to the position of General Sales Manager and received a raise in salary and fringe benefits. (Prince's deposition, p. 30). Plaintiff's first appraisal, dated March 5, 1983, rated his performance at above average, exceeding his employer's expectations. (Plaintiff's Exhibit 2). The next overall performance appraisal is dated January 1, 1985, and rates Olivera as having attained competent performance within employer's expectations. (Plaintiff's Exhibit 3). The overall appraisal has a specific part in relation to senior management level. Under this level Olivera's attitude and personality in relation to confidentiality is stated to be: "Maturation and ability to retain confidential information: good." (Plaintiff's Exhibit 3, p. 5b). His loyalty to the company and his sense of order and system are described as excellent. (Exhibit 3, p. 5c) This performance appraisal took place subsequent to the alleged "incident" of June 11, 1984, wherein plaintiff is accused of having disclosed confidential information of NPR's reduction-in-force plan to an employee who was to be discharged.

The next performance appraisal is dated October 20, 1986, and rated plaintiff's overall performance above average, exceeding his employer's expectations. (Plaintiff's Exhibit 4).

Under attitude and personality at senior management level his maturation and ability to retain confidential information is again described as good. His objectivity, loyalty to the company, judgment, common sense, maturity and reliability is described as excellent. This appraisal was subsequent to plaintiff's alleged indiscretion of making critical comments of NPR's personnel department to the Nestle corporate management in White Plans and the subsequent alleged indiscretion with a Nestle, S.A., auditor. The last performance appraisal was done on October 26, 1987, twenty days prior to his discharge. Olivera is rated as having rendered a competent performance attaining his employer's expectations. (Plaintiff's Exhibit 5). The rating as to Olivera's attitude and personality in regards to confidentiality, tactfulness, politeness and sensitivity is described again as good. His objectivity, fairness in use of authority, loyalty to the company, judgment, common sense, maturity, ability to handle stress situations, sense of order and system and reliability are rated as excellent. In the summary of the appraisal it is stated that Mr. Olivera continues to be a very energetic individual with a good business sense and shows abilities in producing results with limited resources. The last overall performance appraisal was rendered contemporaneously with Olivera's trip to New York, when he committed the alleged indiscretion of providing allegedly incorrect and speculative information to an NPR's corn beef supplier about Prince's retirement from NPR. All through his employment with NPR during the years 1983, 1984, 1985, 1986 and 1987 Olivera received salary increases related to merit and performance. (Prince's deposition, p. 48).

Next, in order to prove that NPR's articulated reasons are but a pretext for discrimination, plaintiff explains his version of the four "incidents" which allegedly moved NPR to discharge him for indiscretion. Olivera has to show by a preponderance of the evidence that the reasons articulated by NPR as grounds for dismissal were most probably not the actual reasons. *Menzel v. Western Auto Supply Co.*, 848 F.2d 327, 330 (1st Cir.1988).

## The Reduction-in-Force Incident

Olivera describes the incident the following way. He thought that the employee, Mr. Tomás Arroyo, had resigned from NPR and he ran into him at NPR's office and told him as a friend: "I understand you are leaving, well, and if there is anything I can do for you I would be happy to, and we are going to miss you...." (Defendant's Exhibit E; Olivera's deposition, pp. 100–101).

## White Plains Incident

Olivera met with Mr. Stinnet, Vice President of Sales of Nestle Foods, who had reorganized the sales force of Nestle Foods, in his office in White Plains, New York. Upon some recommendations made by Mr. Stinnet in relation to doing some findings and motions based on merit alone, Mr. Olivera answered that in NPR the personnel department would not allow them to follow that pattern but would insist on doing it on a seniority basis. (Defendant's Exhibit E; Olivera's deposition, p. 103).

## Courvoisier Incident

NPR alleges that Olivera made false accusations to a Nestle, S.A., auditor, Mr. Courvoisier, about NPR's improper accounting procedures and Mr. Prince taking kickbacks from a beef supplier. Plaintiff has denied making such accusations. (Defendant's Exhibit E; Olivera's deposition, p. 104). The only statements presented by NPR substantiating said incident are based on hearsay, the remarks of Mr. Courvoisier. Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment. *Milissa Garside v. Osco Drug*, 895 F.2d 46 (1st Cir.1990); *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 677 n. 2 (1st Cir.1967). Defendant presents no affidavit from Mr. Courvoisier. Furthermore, the memo appended to defendant's November 16, 1987, letter of separation entitled "HVO incidents" (Plaintiff's Exhibit 12) makes no mention when referring to the Courvoisier incident of Mr. Prince's kickbacks.

## The Beef Supplier Incident

In his deposition, Mr. Prince states: "what the beef supplier heard—I was not there, so I don't know what was said—but what the supplier heard was that I was going to be retiring by December and that Mr. Felipe Silva was going to take over as president." About this incident, Olivera was called to Prince's office and asked what was said about his retirement. He answered that he told the beef supplier that he assumed Mr. Silva would replace Prince whenever he retired.

According to Mr. Prince, at that point in time was when he decided that he only had one course of action and this was to terminate Mr. Olivera. "This was now outside of the company and getting dangerous as far as I was concerned, and my feeling was that if Mr. Olivera is going to be making accusations to internal auditors and he is going to be telling people outside of our organization gross untruths that have a reflection on our total operation, then he no longer can be a member of our senior management." (Defendant's Exhibit 5; Prince's deposition).

Plaintiff submitted a sworn statement subscribed by Mr. Guillermo Santiago, a former Products Manager for NPR. (Plaintiff's Exhibit 7) Mr. Santiago states that he was present on October 28, 1987, with plaintiff and the corned beef supplier, Mr. Robert Tilley, when Tilley asked Olivera when Prince would be retiring from NPR and Olivera answered that Mr. Prince would be retiring from Christmas, four years. Mr. Tilley also asked Olivera if he believed that Mr. Silva was going to be the successor to Mr. Prince and he answered "he has a good chance, but nothing is sure, you never know." (Defendant's Exhibit E; Olivera's deposition, p. 110). Mr. Santiago states that at that time, Mr. Silva was the only vice president of the company.

The "gross untruth," as Mr. Prince described Mr. Olivera's alleged remarks, resulted in not being an untruth at all. Despite a sworn statement wherein Mr. Prince affirms that he did not know when he was going to retire, at a party given on November 22, 1986, Mr. Prince announced

to the group present that he was retiring five years from this coming Christmas. On November 17, 1989, Mr. Prince retired as President of NPR and Mr. Silva was appointed to said position.

Mr. Olivera has addressed the reasons articulated by NPR for his dismissal and has shown by a preponderance of the evidence that they were most probably not the actual reasons. However, even if Olivera has succeeded in creating some doubt about the objective correctness of NPR's decision to fire him, that would not be enough to survive NPR's motion for summary judgment. Merely criticizing one of the company's proffered reasons for the discharge is not enough to raise genuine issues of material fact as to age discrimination. As pointed out in *Gray v. New England Telephone & Telegraph Co.*, 792 F.2d 251, 255 (1st Cir.1986), evidence contesting the factual underpinnings of the reason for the discharge proffered by the employer is insufficient, without more, to present a jury question. Plaintiff continues to carry the burden of showing discriminatory intent, and the relevant question is whether the given reason was pretext for discrimination. *See Medina Muñoz v. R.J. Reynolds Tobacco Company*, 896 F.2d 5 (1st Cir.1990) ("an ADEA plaintiff must do more than simply refute or cast doubt on the company's rationale for the adverse action. The plaintiff must also show a discriminatory animus based on age"). *See also Dea v. Look, supra; Menard v. First Security Services Corp., supra; White v. Vathally*, 732 F.2d 1037, 1042 (1st Cir.), *cert. denied* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984); *Loeb v. Textron, supra,* ("an employer is entitled to make its own subjective judgments, however misguided any may appear to the jury, and to fire an employee for any reason that is not discriminatory"); *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1341 (1st Cir. 1988) (employee may be fired "for any reason (fair or unfair) or for no reason," so long as firing is not related to employee's age).

We must look to see whether Olivera's evidence, when taken as a whole, suggests a countervailing reason for his termination, specifically that he was discharged because of his age. *Hebert v. Mohawk Rubber Co.*, 872 F.2d at 1114.

To create a genuine issue as to the existence that the real reason for discharge was age discrimination, Olivera relies on allegations—his own testimony. He states that during a sales reorganization in late June 1985 eight people were fired and four or five of them were over forty and that within two years they were replaced by eight or nine people; all of them except one were under thirty years old. (Plaintiff's deposition, p. 50).

Olivera's listing of termination does not demonstrate the discriminatory animus he seeks to expose. First, not all of the employees terminated from NPR were older workers covered by ADEA. According to Olivera, half of the salaried employees laid off or maybe more than half of the employees were over forty. These numbers do not provide support to Olivera nor do they indicate by themselves that NPR was terminating workers solely to discriminate on the basis of age. *Cf. Schuler v. Polaroid Corp.*, 848 F.2d 276, 279 (1st Cir.1988). Olivera has not provided any detail of the terminations to demonstrate that they were unwilling terminations, not legitimate terminations or retirements. The statistical data is lifeless. *Cf. Hebert v. Mohawk Rubber Co., id.* (Plaintiff breathed life into the statistical data by recounting the experiences of eight of the discharged workers in the protected class, including decisions by four of them to prosecute ADEA actions). The statistical evidence does not show that those terminations were designed to accomplish a facially neutral reorganization by systematically eliminating older workers from the work force. Secondly, Olivera has not shown any connection between himself and those terminations occurring two years prior to his discharge. We further note that Olivera, when hired, was already fifty years old, making it seem less likely that his discharge five years later was based on company prejudice against older people. *See, e.g., Menard v. First Sec. Services Corp.*, 848 F.2d at 289 n. 4.

Olivera also alleges that as of the date of discharge all new personnel hired within the previous five years were under thirty years old with one exception. This fact by itself does not indicate age discrimination. Despite Olivera's contention that NPR wanted to clean house and recruit a younger sales force, no evidence is presented that any older salesmen were actually discharged and replaced by these new personnel. *Medina–Muñoz*, 896 F.2d at 10 n. 4. Olivera further alleges that Mr. Silva on several occasions expressed the opinion that people were unable to perform up to his standards because of their age. (Plaintiff's deposition, pp. 68, 71). The discriminatory remarks were allegedly made by Mr. Silva but the decision to discharge Olivera was made by Mr. Prince (Defendant's Exhibit B; Prince's affidavit). Mr. Prince described himself as having the "complete and final authority to make the decision on whether or not Mr. Olivera's employment continues with NPR." See also Exhibit C, Mr. Jesús T. Perry's affidavit, wherein he states: "In Mr. Olivera's case, our company's president, Mr. Eugene Prince, made the decision to terminate Mr. Olivera's employment."

The statements made by Mr. Silva are not probative of the motivation behind the decision of Mr. Prince. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984). "The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d at 10. Olivera has not shown that Mr. Silva made or influenced in any manner Mr. Prince's decision.

Another piece of circumstantial evidence presented by Olivera is a comment made by an official of Nestle Enterprise Company that NPR needed to "flatten" its sale organization. Olivera argues that "flatten" means that NPR should eliminate positions held by older executives. NPR asserts that the commonly understood management meaning of "flattening" is the elimination of unnecessary layers of supervision within a corporate organizational structure. NPR further alleges that the "fact that NPR has legitimate business reason to 'flatten' its organization does not constitute a pretext for age bias."

An employer can eliminate managerial positions during corporate reorganization due to a legitimate business reason. *Schweizer v. Strippit/Di–Arco–Houdaille*, 44 Fep.Cases 1895, 1987 WL 15153 (W.D.N.Y.1987). Furthermore, Olivera has not presented any evidence of "flattening" of NPR's sales force. In the summary judgment context, "plaintiffs must point, if not to fire at least to some still-warm embers; 'smoke alone is not enough to force defendants to a trial to prove that their actions were not [age] discriminatory.'" *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989) (*quoting Manego v. Cape Cod Five Cents Savings Bank*, 692 F.2d 174, 177 (1st Cir.1982).

Another suggestive scrap of circumstantial evidence mentioned by Olivera is the fact that in Christmas of 1986 the company offered all the employees over 58 a retirement package. The offer by NPR of voluntary early retirement is not per se indicia of age bias absent evidence of coercion by the employer to force older employees into retirement under the early retirement plan. *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 255 (1st Cir.1986).

We conclude that Olivera has not produced direct or circumstantial proof of age discrimination sufficient to defeat defendant's motion for summary judgment. The evidence presented by Olivera, viewed in the light most favorable to him, is insufficient to create a genuine issue of material facts as to whether " 'but for' his employer's motive to discriminate against him because of his age, [Olivera] could not have been discharged." *Loeb*, 600 F.2d at 1019.

The evidence presented by Olivera reflects that the reasons given by NPR for its employment decision were most probably not the "real" ones, however, that does not prove age discrimination; rather, such evidence proves only that some other reason motivated the employer. Absent some evidence that the real reason was the employee's age, either directly through employer's statements or indirectly through

**292**

evidence of the employer's treatment of other members of the protected class, it is impossible for an employee who challenges the decision as discriminatory to survive a motion for summary judgment. *Snyder v. Washington Hosp. Center,* 36 Fep.Cases 445, 448, 1984 WL 3244 (D.D.C.1984).

### State Claim

The Court has dismissed plaintiff's federal claim prior to trial. The Court finds that a balance of the factors involved in assuming jurisdiction over pendent state claims point toward our declining to exercise the same. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988).

WHEREFORE, in view of the above, summary judgment is GRANTED in favor of Nestle–Puerto Rico, Inc. The Court ORDERS the DISMISSAL of the complaint.

IT IS SO ORDERED.