UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1156

JORGE VEGA AND EUSEBIO LEON,

Plaintiffs, Appellants,

v.

KODAK CARIBBEAN, LTD.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Torruella, Selya and Cyr,

Circuit Judges.

Carlos F. Lopez and Maria Del C. Gomez-Cordova on brief for

appellants.
Carlos V. J. Davila, Jacqueline D. Novas, and Fiddler,

Gonzalez & Rodriguez on brief for appellee.

August 24, 1993

SELYA, Circuit Judge. William Shakespeare once wrote
SELYA, Circuit Judge.

that "parting is such sweet sorrow." In this case, which

requires us to mull the circumstances under which an employee's

"early retirement" can be considered a "constructive discharge,"

plaintiffs' parting with their longtime employer proved more

sorrowful than sweet. When plaintiffs sued, the district court

added to their pain, granting the employer's motion for summary

judgment. We can offer little comfort.

I

Background

Consistent with the method of Fed. R. Civ. P. 56, we

draw upon the undisputed facts to set the stage for what

transpired.

Defendant-appellee Kodak Caribbean, Ltd. (Kodak)

decided to downsize its operations in Puerto Rico. To this end,

it announced the availability of a voluntary separation program

(the VSP).1 On September 15, 1989, Kodak held a meeting to

explain the VSP to its local work force. The company distributed

descriptive documents to virtually all Kodak employees, save only

for certain managerial and human resources personnel, regardless

of age or years of service. The written materials spelled out

the benefits afforded, the method of calculating severance pay,

and how the program would be implemented.

1The record reflects that Kodak's parent company decided to
slash costs by reorganizing its operations throughout the United
States and, consequently, promulgated the VSP on a nationwide
basis. The Puerto Rico reduction in force was part and parcel of
this larger reorganization.

2

Kodak encouraged workers to participate in the VSP, but

did not require them to do so. Withal, the company informed all

its employees that if substantially fewer than twenty-six

individuals opted to enter the VSP, others would be reassigned or

furloughed in order to reach the desired staffing level.

Two veteran employees, Jorge Vega and Eusebio Leon,

were among those who chose to participate in the VSP. After

signing an election form on October 4, 1989, Leon received a

lump-sum severance payment of $28,163.16 plus other benefits.

Vega followed suit on October 10, 1989, executing a similar form

and receiving a $52,671.00 severance payment. The men retired on

the dates designated in their respective election forms. At no

time did either man ask to revoke his election or offer to refund

his severance payment.

In 1990, Vega and Leon brought separate suits against

Kodak, each alleging discrimination on the basis of age. Their

complaints, which invoked the Age Discrimination in Employment

Act (ADEA), 29 U.S.C. 621-634 (1988 & Supp. III 1991), and

certain Puerto Rico statutes, charged that Kodak's implementation

of the VSP violated the law. The district court consolidated the

two cases and, on December 10, 1992, granted Kodak's motion for

brevis disposition.2 This appeal ensued.

2Appellants' suits triggered the district court's federal
question jurisdiction. See 28 U.S.C. 1331 (1988). However,

when the district court disposed of the ADEA claims, the pendent
claims became subject to dismissal for want of subject matter
jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715,

726 (1966) ("[I]f the federal claims are dismissed before trial,
. . . the state claims should be dismissed as well."); Gilbert v.

3

II

The Legal Framework

In a wrongful discharge case under the ADEA, the

plaintiff bears the ultimate "burden of proving that . . . he

would not have been fired but for his age." Freeman v. Package

Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988). Absent direct

evidence of purposeful age discrimination and no such evidence

embellishes the record before us the familiar burden-shifting

framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-

05 (1973), initially requires that a plaintiff establish a prima

facie case by demonstrating that he was (i) within the protected

age group, (ii) meeting the employer's legitimate performance

expectations, (iii) actually or constructively discharged, and

(iv) replaced by another individual of similar skills and

qualifications, thereby confirming the employer's continued need

for equivalent services. See Mesnick v. General Elec. Co., 950

F.2d 816, 823 (1st Cir. 1991), cert. denied, 112 S. Ct. 2965

(1992). When a reduction in force is involved, a plaintiff may

satisfy the fourth element by demonstrating that the employer did

not treat age neutrally in shrinking its payroll. This lack of

neutrality may be manifested either by a facially discriminatory

policy or by a policy which, though age-neutral on its face, has

the effect of discriminating against older persons, say, by

City of Cambridge, 932 F.2d 51, 67 (1st Cir. 1991) (similar),

cert. denied, 112 S.Ct. 192 (1992); Brennan v. Hendrigan, 888

F.2d 189, 196 (1st Cir. 1989) (similar). Hence, we focus
exclusively on appellants' ADEA claims.

4

leading inexorably to the retention of younger employees while

similarly situated older employees are given their walking

papers. See Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1110-11

(1st Cir. 1989); Holt v. Gamewell Corp., 797 F.2d 36, 37-38 (1st

Cir. 1986).

Establishing a prima facie case creates a presumption

that the employer unlawfully discriminated and shifts the burden

of production to the defendant. See Hebert, 872 F.2d at 1110-11.

At this second stage, the employer must rebut the inference of

age discrimination by articulating some legitimate,

nondiscriminatory reason for the employment action. See Mesnick,

950 F.2d at 823; Hebert, 872 F.2d at 1111. If the employer

advances the required showing, the inference originally generated

by the prima facie case drops from sight. In that event, it

falls upon the plaintiff (who bears the burden of persuasion

throughout) to show that the employer's alleged justification is

a mere pretext for age discrimination. See Mesnick, 950 F.2d at

823. To prevail at this third stage, the plaintiff must

ordinarily do more than impugn the legitimacy of the employer's

asserted justification; he must also adduce evidence "of the

employer's discriminatory animus." Id. at 825; see also Hazen

Paper Co. v. Biggins, 113 S. Ct. 1701, 1706, 1708 (1993) (stating

that liability under the ADEA depends upon whether age "actually

motivated the employer's decision" and hesitating to infer age-

based animus solely "from the implausibility of the employer's

explanation"); cf. St. Mary's Honor Ctr. v. Hicks, 61 U.S.L.W.

5

4782, 4785 (U.S. June 25, 1993) (holding that success in a race-

discrimination suit requires a "finding that the employer's

action was the product of unlawful discrimination" and not merely

"the much different (and much lesser) finding that the employer's

explanation of its action was not believable").

The intersection at which the burden-shifting framework

meets Rule 56 is also well mapped. To survive summary judgment,

"a plaintiff must establish at least a genuine issue of material

fact on every element essential to his case in chief." Mesnick,

950 F.2d at 825; see also Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986); Hebert, 872 F.2d at 1106. In other words, a

plaintiff must adduce some minimally sufficient evidence to

support a jury finding that he has met his burden at the first

stage, and again at the third stage (so long as the defendant has

met its second-stage burden by articulating a nondiscriminatory

reason for the adverse employment action). Moreover, the

material creating the factual dispute must herald the existence

of "definite, competent evidence" fortifying the plaintiff's

version of the truth. Mesnick, 950 F.2d at 822; see also Mack v.

Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989).

Optimistic conjecture, unbridled speculation, or hopeful surmise

will not suffice. See Medina-Munoz v. R.J. Reynolds Tobacco Co.,

896 F.2d 5, 8 (1st Cir. 1990).

On appeal, we afford plenary review to a grant of

summary judgment and possess the power to affirm on any

independently sufficient ground made manifest by the record. See

6

Mesnick, 950 F.2d at 822; Garside v. Osco Drug, Inc., 895 F.2d

46, 48-49 (1st Cir. 1990).

III

Analysis

On this record, appellants fall prey to Rule 56 at

square one, for they have failed to adduce evidence sufficient to

establish their prima facie case. We explain briefly.

To satisfy the third element in the prima facie case,

ADEA suitors who claim to have been wrongfully ousted from their

jobs must demonstrate that they were actually or constructively

discharged. Here, appellants concede that they were not

cashiered. They maintain, however, that Kodak's sponsorship of

the VSP effected their constructive discharges by forcing them

into an unpalatable (and unwarranted) choice between early

retirement and dismissal.3 The facts of record, fused with the

appropriate legal standard, belie the charge.

Mere offers for early retirement, even those that

include attractive incentives designed to induce employees who

might otherwise stay on the job to separate from the employer's

service, do not transgress the ADEA. See Henn v. National

Geographic Soc'y, 819 F.2d 824, 828 (7th Cir.) (characterizing an

early retirement package as "a boon" to the recipient and not

3We use the euphemism "early retirement" in its broad,
nontechnical sense to include any employer-sponsored plan that
provides a special benefit to an employee in return for a
voluntary decision to withdraw from active employment at an
earlier-than-anticipated time. The VSP is such a plan.

7

automatically indicative of age discrimination), cert. denied,

484 U.S. 964 (1987); see also Hebert, 872 F.2d at 1111; Schuler

v. Polaroid Corp., 848 F.2d 276, 278 (1st Cir. 1988). To

transform an offer of early retirement into a constructive

discharge, a plaintiff must show that the offer was nothing more

than a charade, that is, a subterfuge disguising the employer's

desire to purge plaintiff from the ranks because of his age. See

Hebert, 872 F.2d at 1111. Under this dichotomy, offers which

furnish employees a choice in name only are impermissible

because, in the final analysis, they effectively vitiate the

employees' power to choose work over retirement. Phrased another

way, the law regards as the functional equivalent of a discharge

those offers of early retirement which, if refused, will result

in work so arduous or unappealing, or working conditions so

intolerable, that a reasonable person would feel compelled to

forsake his job rather than to submit to looming indignities.

See Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 561 (1st Cir.

1986); Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st

Cir. 1977). In terms of this standard, a plaintiff who has

accepted an employer's offer to retire can be said to have been

constructively discharged when the offer presented was, at rock

bottom, "a choice between early retirement with benefits or

discharge without benefits," or, more starkly still, an

"impermissible take-it-or-leave-it choice between retirement or

discharge." Hebert, 872 F.2d at 1113.

Kodak's promulgation of the VSP cannot be said to have

8

presented Vega and Leon with this sort of Hobson's choice. The

offer was cast as one to be accepted or rejected at an employee's

will. The contract and explanatory memorandum contained numerous

words and phrases alerting the reader to its voluntary nature.

Moreover, the circumstances of the offer were not coercive:

employees had six weeks to mull the offer's ramifications before

making a decision; they were encouraged to gather information and

ask questions; and they retained the right to revoke the election

for a period of time. An employer's effort to construct a

pressure-free environment conducive to calm decisionmaking in the

employee's enlightened self-interest often constitutes the

hallmark of a real offer as opposed to an ultimatum. See Henn,

819 F.2d at 828-29 (considering similar factors in analyzing the

voluntariness of an early retirement plan). So it is here.

Finally, nothing in the record indicates that, for any

particular employee, refusing early retirement meant either

discharge or the imposition of working conditions so abhorrent as

to justify resignation. To be sure, Kodak said that it would

likely furlough a number of employees if not enough workers

elected to depart voluntarily. But, three things palliate the

inference that appellants seek to draw from this statement: (1)

the company simultaneously announced, both orally and in writing,

that if a sufficient complement participated in the VSP, the need

to thin the ranks unilaterally would never arise; (2) it did not

directly or indirectly indicate which particular individuals

would be tapped should layoffs prove to be necessary; and (3) it

9

never threatened that persons ultimately selected for involuntary

separation would be treated harshly.4

Notwithstanding the formidable array of circumstances

weighing in favor of a finding that appellants resigned

voluntarily, appellants assert that they were constructively

discharged because they believed that rejecting the VSP was

tantamount to forfeiting their jobs. We discern no genuine issue

of material fact; assuming that appellants' mindset was as

stated, their conclusion does not follow. An employee's

perceptions cannot govern a claim of constructive discharge if,

and to the extent that, the perceptions are unreasonable. See

Calhoun, 798 F.2d at 561. Were the rule otherwise, any employee

who quit, and thereafter thought better of it, could claim

constructive discharge with impunity. The law, therefore,

demands that a disgruntled ex-employee's professed belief about

the likely consequences of refusing an offer for early retirement

be judged by an "objective standard," the focus of which is "the

reasonable state of mind of the putative discriminatee." Id.

(citations and internal quotation marks omitted). In light of

the uncontroverted facts of record here, appellants' impression

that the ignominy of firing comprised the only alternative to

accepting the VSP was thoroughly unreasonable.

4For example, Kodak never warned that involuntarily
separated employees would be stripped of severance benefits or
treated less favorably than those persons who chose to enter the
VSP. And, moreover, the company suggested that attempts would be
made to offer involuntarily separated employees comparable
positions elsewhere in the Kodak organization, as opposed to
simply cutting them loose.

10

In an attempt to coat their subjective beliefs with a

patina of plausibility, appellants ignore the fact that no

firings or layoffs ever materialized, and, instead, tout a

supervisor's statement that Kodak shelters "no sacred cows."

This statement, directed not toward Vega and Leon in particular

but toward Kodak's entire work force, articulated an unfortunate

but hardly remarkable condition of working life: broad-based

subjugation to the risk of future termination is common fare in a

depressed economic climate. It, alone, is insufficient to

constitute constructive discharge. See Bodnar v. Synpol, Inc.,

843 F.2d 190, 193-94 (5th Cir.) (holding that the risk, shared by

all company employees, that appellants' posts would be eliminated

if too few accepted an early retirement plan did not constitute a

"working condition[] . . . so intolerable as to force appellants'

resignation"), cert. denied, 488 U.S. 908 (1988); Calhoun, 798

F.2d at 561 (stating that an employee is not "guaranteed a

working environment free from stress") (quoting Bristow v. Daily

Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied,

475 U.S. 1082 (1986)).

In fine, the record is barren of evidence competent to

support an inference that Kodak placed appellants "between the

Scylla of forced retirement [and] the Charybdis of discharge."

Hebert, 872 F.2d at 1112. Rather, Kodak asked its employees to

choose between immediate severance with its associated benefits

or continued work with its inherent risks. As the alternative to

separation from the employer's service was not so onerous as to

11

compel a reasonable person's resignation, appellants cannot

convincingly claim to have been constructively discharged.

IV

Conclusion

We need go no further. Although Kodak has assembled an

armada of additional asseverations in support of the decision

below, addressing those points would serve no useful purpose. It

suffices to say that, since appellants failed to limn a prima

facie case of age discrimination,5 the district court

appropriately entered summary judgment in the defendant's favor.

Affirmed.

5Because appellants had the burden of adducing evidence on
each of the four elements of their prima facie case, the
deficiency we have described is fatal to their suits. Thus,
although we note in passing that their prima facie case flounders
in another respect as well the record does not support their
assertions that Kodak failed to treat age neutrally in its
authorship and implementation of the VSP we do not pause to
elucidate the point.

12