Jerome GAFFNEY, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 91–1182–LFO.

United States District Court,
District of Columbia.

Aug. 10, 1993.

Ira M. Lechner, Washington, DC, for plaintiffs.

James R. Layton, Asst. U.S. Atty., Washington, DC (Lt. Cdr. Mark D. Lawton, Dept. of Navy, Office of JAG, Alexandria, VA, of counsel), for defendant.

*MEMORANDUM AND ORDER*

OBERDORFER, District Judge.

This matter is before the Court on plaintiffs' motion for class certification, plaintiffs' motion for partial summary judgment, and defendant's motion for summary judgment. Plaintiffs are four retired federal employees who claim that they are owed backpay under employee leave statutes. For the reasons stated below, the parties' motions for summary judgment will be granted in part and denied in part, and plaintiffs' motion for class certification will be denied.

## I.

Plaintiffs assert two discrete claims. Count I involves the calculation of the "lump sum" payment that plaintiffs received upon their separation from service as compensation for accumulated but unused annual leave. Count II relates to plaintiffs' entitlement to "premium pay" for Sundays on which they were regularly scheduled to work but took paid leave instead.

Plaintiffs move for certification of two plaintiff classes consisting essentially of all present and former federal employees who are entitled to additional pay, both prospectively and retroactively (limited only by the six-year statute of limitations), under these two theories. Plaintiffs have also moved for partial summary judgment on the issue of liability. Defendant has opposed class certification and has filed a motion to dismiss or for summary judgment.

## A.

Federal employees are entitled to annual leave with pay under 5 U.S.C. § 6303. The statute sets forth the formula by which such leave is accrued. Generally, employees with less than three years of service accrue one-half day of leave for each biweekly pay period; employees with three or more but less than 15 years accrue three-fourths of a day for each pay period; and employees with 15 or more years of service accrue one full day for each biweekly pay period. 5 U.S.C. § 6303(a).

Under 5 U.S.C. § 5551(a), federal employees who are separated from service are entitled to receive a lump sum payment for the annual leave that they have accrued but not taken. The statute provides that this payment "shall equal the pay ... the employee or individual would have received had he remained in the service until expiration of the period" of the accumulated leave. 5 U.S.C. § 5551(a). Each of the named plaintiffs, prior to their retirement, had accumulated several hundred hours of unused annual leave.

Federal employees receive a base salary that is determined by their "GS" grade and step. There are also several different statutes that entitle employees to "premium pay" in addition to the base salary in certain circumstances. First, employees are entitled to premium pay of 25 percent of their base salary when they are regularly scheduled to work on Sunday. 5 U.S.C. § 5546(a). Second, they are entitled to premium pay of ten percent of when they are regularly scheduled to work nights. 5 U.S.C. § 5545(a). Third, they are entitled to premium pay when their work involves certain "hazardous duties." 5 U.S.C. § 5545(d). In addition, federal employees are entitled to overtime pay of time-and-a-half for work performed in excess of 40 hours per week or eight hours per workday. 5 U.S.C. § 5542. During their federal employment, the named plaintiffs regularly received such premium or overtime pay in addition to their base salaries.

The government's policy is not to include such premium or overtime pay in the computation of an employee's lump sum payment under 5 U.S.C. § 5551(a). Instead, the defendant calculates the lump sum using only an employee's base pay rate. In Count I, plaintiffs claim that this practice violates the statutory directive that the lump sum equal "the pay ... the employee or individual would have received had he remained in the service." 5 U.S.C. § 5551(a). Plaintiffs argue that the defendant must examine employees' pay records upon retirement and identify those employees who, it can reasonably be assumed, "would have received" premium pay had they remained in the service.

Recognizing that some essentially arbitrary test would be required to identify those employees who qualify, plaintiffs propose that all employees who were regularly scheduled to receive premium or overtime pay for each of the four consecutive pay periods (i.e., eight consecutive weeks) prior to their separation from service should be entitled to have such pay included in their lump sum payment.

## B.

In addition to the annual leave provided for in 5 U.S.C. § 6303 and described above, federal employees are entitled to three other types of leave with pay under provisions of Title 5 of the United States Code. Employees are also entitled to sick leave, 5 U.S.C. § 6307, court leave, 5 U.S.C. § 6322, and military leave, 5 U.S.C. § 6323. Each of those statutes provides (in slightly different language) that the employee is entitled to such leave "without reduction in pay."

As explained above, federal employees are entitled to "premium pay" when they are regularly scheduled to work on Sundays. 5 U.S.C. § 5546(a). When a federal employee is regularly scheduled to work on Sunday but instead takes leave under one of the leave-with-pay statutes, the defendant's policy is to pay the employee only his or her basic pay, not the Sunday premium. In Count II, plaintiffs claim that defendant's failure to include the Sunday premium in these circumstances violates the command in the leave-with-pay statutes that such leave be without reduction in pay.

## II.

Each of plaintiffs' two claims will be addressed first, followed by the issue of class certification. Because its resolution is relatively straightforward, Count II will be addressed first.

### A.

■■■ Plaintiff's claim relating to Sunday premium pay (Count II) is controlled by a recent decision of the United States Court of Appeals for the Federal Circuit.[1] In *Armitage v. United States*, 991 F.2d 746 (Fed.Cir. 1993), the court squarely held that the plaintiffs "are entitled to receive Sunday premium pay for hours regularly scheduled for work on Sunday, but which were not worked due to charged periods of authorized annual or sick leave." *Id.* at 750.

This case presents the identical issue. *Armitage* therefore dictates a favorable judgment for plaintiffs on the issue of liability as to Count II.[2]

### B.

■■■ Unlike their Sunday premium claim, plaintiffs' "lump sum" claim (Count I) does not arise under the leave-with-pay statutes. Therefore, it is not controlled by *Armitage*, or by the earlier Federal Circuit decision on which it relied, *Lanehart v. Horner*, 818 F.2d 1574 (Fed.Cir.1987). Rather, plaintiffs' argument in Count I is based on the lump sum statute, 5 U.S.C. § 5551(a). The parties apparently agree that there is no pertinent legislative history behind the lump sum statute nor any relevant published judicial opinion interpreting it.

■■■ Because the crucial language in § 5551(a) expresses a counterfactual—what the employee *"would have received* had he remained in the service"—there is an inher-

ent ambiguity in the provision, and one must necessarily speculate as to whether and to what extent a given employee "would have received" premium pay if he had continued working rather than retiring. This fact reveals an important distinction between this claim and plaintiffs' Sunday premium pay claim. In the latter case, there is no need for speculation as to the amount of pay the employee would have received if he had not taken leave: he would have received the Sunday premium pay.

Not surprisingly, therefore, the test that plaintiffs propose for determining whether an employee "would have received" premium pay had he continued working—examining the last four consecutive pay periods—is entirely arbitrary, and finds no basis in the statute. It is true that any such test in this context would have an arbitrary and fictional quality, but that fact simply highlights the problematic nature of imposing such an obligation to augment the lump sum in this manner on the government.

It is well established that "[i]f [a] statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). It is permissible and reasonable to interpret the lump sum statute as the Office of Personnel Management (OPM) has done, i.e., as limiting the lump sum entitlement to his or her base pay. Indeed, the base pay is the only pay that an employee is certain to have received. Unlike the case with the leave-with-pay statutes, there is no judicial interpretation of the relevant phrase and no legislative

---

1.  Under 28 U.S.C. § 1295, the Federal Circuit has exclusive jurisdiction over appeals of compensation disputes with the United States. Because an appeal in this case will go to the Federal Circuit rather than to the District of Columbia Circuit, the former court's decisions are binding here. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573 (Fed.Cir.1984).

2.  The United States expressly agreed to treat *Armitage* as a "test case" as an alternative to

maintenance of the case as a class action. *See Armitage v. United States*, 18 Cl.Ct. 310 (1989). The defendant is therefore presumably bound by the holding in *Armitage*. When asked about this issue at oral argument, counsel for the parties stated that, although the defendant may be bound by the *Armitage* decision, numerous claims would be precluded by the statute of limitations under the limited "test case" approach as distinguished from pursuit of a class action.

history indicating that something more than base pay was intended.

This conclusion does not in any way conflict with the Federal Circuit's decisions in *Armitage* and *Lanehart.* In those cases, the court concluded that the word "pay" in the leave-with-pay statutes (which entitle employees to leave without reduction in pay) was broad enough to include all forms of pay, including premium pay. Here, the pivotal language is not the word "pay," but the phrase "would have received." It is certainly possible, and reasonable, to agree that "pay" is broad enough to encompass premium pay, but nevertheless conclude that the phrase "*would have received*" contemplates only entitlement to base pay.

■ Plaintiffs argue that OPM has issued no formal rule or regulation on this matter, so there is no agency interpretation to which deference is owed. Plaintiffs' argument is without merit. It has plainly been OPM's official and consistent policy not to include premium pay in the lump sum payment. Moreover, OPM's Federal Personnel Manual provides:

> The lump-sum payment covers the period over which an employee's annual leave would have carried him if he had actually used it, *based on the pay rate he is receiving* immediately prior to the date he is considered separated for lump-sum purposes.

FPM Supp. 990–2, Bk. 550, Subch. S2, § S2–3(a) (emphasis added). Plaintiffs' argument that the above language is ambiguous is also meritless. The phrase "pay rate" clearly suggests a single, set rate, which can only be an employee's base pay rate.

Because OPM's interpretation and application of § 5551(a) is permissible and reasonable, it is entitled to deference. Accordingly, summary judgment will be entered for defendant on Count I.

## C.

Because Count I will be dismissed, plaintiffs' motion for class certification with respect to that count is moot.

■ With respect to Count II, plaintiffs request certification of the following class: "All persons employed by the United States paid under the GS schedule after May 22, 1985, who are or were regularly scheduled to work on Sunday but who did not receive Sunday premium pay when they took authorized leave on Sunday." [3]

Only one of the named plaintiffs, Carl Murphy, is a putative class representative with respect to this claim.

Under the Federal Rules of Civil Procedure, a class action must satisfy the four prerequisites set forth in Rule 23(a) and must also fall into one of the three categories specified in Rule 23(b).

### 1.

There is no question that the first two elements of Rule 23(a) are met here. The class is certainly "numerous" (Rule 23(a)(1)) and there is at least one common question of law (Rule 23(a)(2)). Defendant's principal argument is that plaintiffs fail to meet the "typicality" and "representativeness" requirements of Rule 23(a)(3) and (4).

First, defendant argues that Murphy is a competent representative only with respect to other employees in his particular job classification at the General Services Administration. Defendant points to different scheduling practices among various federal departments and among different job classifications. This argument misses the mark. The phrase "regularly scheduled" is a term of art defined in OPM regulations. *See* 5 C.F.R. § 550.103(p). Although it may be difficult to identify the particular employees in each agency who were "regularly scheduled" to work on Sundays, this difficulty does not detract as a legal matter from the typicality or representativeness of Murphy's claim. Once the relevant employees are identified, it does not appear that their Sunday-premium-pay claims will differ from that of Murphy.

■ Second, defendant argues that Murphy's claim is atypical because he has not

---

**3.** The limitations period governing plaintiffs' claims is six years. May 22, 1985 is six years *before the filing of plaintiffs' complaint.*

taken Sunday leave under *each* of the four "leave with pay" statutes. Defendant notes that the different statutes contain slightly different wording. This argument is unpersuasive, however, because the Federal Circuit has explicitly held that the differences in wording among the leave-with-pay statutes are not significant. *Lanehart,* 818 F.2d at 1582.

### 2.

■ Turning to Rule 23(b), plaintiffs primarily argue that the proposed class falls within Rule 23(b)(1)(A), which permits a class action if "the prosecution of separate actions by or against individual members of the class would create a risk of ... inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Whether the proposed class meets this requirement presents a close question.

On the one hand, the government is required by practical circumstances to deal with all putative class members in the same way. *See* Newberg on Class Actions § 4.08 (2d ed. 1985); *Robertson v. National Basketball Ass'n,* 389 F.Supp. 867, 901 (S.D.N.Y. 1975). It would be problematic, as well as administratively unworkable, for federal employees' entitlement to Sunday premium pay to depend on the result of their individual litigation.

■ On the other hand, there is no genuine risk of "inconsistent or varying adjudications" on the question of liability, because the Federal Circuit has now ruled on the precise issue raised here. It is significant in this regard that appeals from District Courts as well as the Court of Federal Claims in federal compensation disputes go to the Court of Appeals for the Federal Circuit. As a result, the *Armitage* decision is binding as authority in all such cases.

There is some authority for certifying a Rule 23(b)(1)(A) class action to protect plaintiffs from "non-acquiescence," i.e., the government's failure to apply a holding government-wide, effectively forcing each individual plaintiff to litigate the issue to get relief.

*Duggan v. Bowen,* 691 F.Supp. 1487, 1503 & n. 22 (D.D.C.1988). While this concern certainly appears to be implicated here, the approach does not find support in the literal language of Rule 23(b)(1)(A). That provision requires a risk of inconsistent adjudications. In the end, there is no such risk here.

■ In the alternative, plaintiffs propose that the class be certified under Rule 23(b)(3), which permits a suit to be maintained as a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

First, common questions of law do not "predominate" in this case. Rather, there is only a single common question: the government's liability for Sunday premium pay on days when employees take paid leave. That issue, moreover, has been resolved in another forum, the Court of Appeals for the Federal Circuit. The remaining issues—whether each plaintiff was "regularly scheduled" to work on Sundays, whether the plaintiff took leave under one of the leave-with-pay statutes, and the amount of backpay to which he or she is entitled—are all "questions affecting only individual members." In addition, a Rule 23(b)(3) class action requires "individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). With a class as numerous as that proposed, the notification and opt-out procedures are likely to be extremely difficult to manage, a consideration expressly cited in the text of Rule 23(b)(3) as relevant to the appropriateness of class certification.

In light of all the circumstances, it would not be proper to certify the proposed class under either Rule 23(b)(1)(A) or Rule 23(b)(3).

\*    \*    \*    \*    \*    \*

For the foregoing reasons, it is this 9th day of August, 1993, hereby

ORDERED: that plaintiffs' motion for partial summary judgment should be, and is hereby, GRANTED as to Count II and DENIED as to Count I; and it is further

ORDERED: that defendant's motion for summary judgment should be, and is hereby, GRANTED as to Count I and DENIED as to Count II; and it is further

ORDERED: that Count I is DISMISSED pursuant to Fed.R.Civ.P. 56; and it is further

DECLARED: that plaintiff Murphy is entitled to receive Sunday premium pay for hours regularly scheduled for work on Sunday, but which were not worked due to periods of authorized leave, from May 22, 1985; and it is further

ORDERED: that plaintiffs' motion for class certification as to Count I is DENIED as moot; and it is further

ORDERED: that plaintiffs' motion for class certification as to Count II is DENIED; and it is further

ORDERED: that counsel shall attend a status conference.