Tucker v. Kingsbury Corp.          CV-94-341-SD  06/19/96 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


<u>Byron Tucker</u>

    v.                                    Civil No. 94-341-SD

<u>Kingsbury Corporation</u>


<u>O R D E R</u>

In this civil action, plaintiff Byron Tucker alleges that defendant Kingsbury Corporation terminated his employment in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621, <u>et seq.</u> (1985 & Supp. 1996).

Presently before the court is Kingsbury's motion for summary judgment, to which plaintiff objects.


<u>Background</u>

Plaintiff Byron Tucker began his employment with Kingsbury Corporation in October 1963 as a machine operator. Deposition of Byron Tucker at 2 (attached to Defendant's Motion for Summary Judgment as Exhibit 3). Over the ensuing nearly thirty years, the capacity in which he was employed by Kingsbury permutated several times, finally resulting in a position in the Information

Services department as one of two programmer/analysts. Plaintiff's Pretrial Statement ¶¶ 2, 7, 8.

Two months prior to the June 22, 1993, reduction in force (RIF), wherein Tucker was among those cashiered, Kingsbury changed the manner in which salaried employees would be evaluated for retention. Whereas prior to April 28, 1993, layoffs were allegedly performed by seniority, id. ¶ 13,[1] a memorandum which is alleged to have been distributed to all employees on said date

_____

[1]Kingsbury's former policy regarding seniority, and layoffs and recalls in particular, was as follows:

**LAYOFF AND RECALL**

For purposes of layoff and recall after layoff, seniority shall be administered on a departmental basis. Should it become necessary to reduce the workforce, the following factors shall be taken into consideration:
  A. Continuous length of service in the employ of the company
                          and
  B. Skill and ability required to perform the available work.

**DETERMINING FACTOR**

If, as between two or more employees, the skill and ability factors are approximately equal, continuous length of service shall be used as the determining factor in selecting employees to be laid off, and in such event the principle of last in, first out, and first out, last in, shall apply.

Excerpt from Kingsbury's Employee Handbook at 7.2 (attached to Plaintiff's Objection as Exhibit 3).

indicated that although the hourly work force would be reduced by seniority on a department-by-department basis, "[s]alaried personnel reductions . . . will be based on business requirements," 1993 Wage and Employment Information Memorandum from Jeffrey M. Toner, Vice President of Human Resources at Kingsbury, ¶ 4 (attached to Defendant's Motion as Exhibit 1A).

Of the seventeen employees laid off on June 22, 1993, sixteen were in the ADEA's protected class.  Within plaintiff's department, Information Services, a determination had been made by Kingsbury management that one of the two programmer/analyst positions, then held by plaintiff and Faith Ball, would be eliminated as part of the June 1993 RIF.  Plaintiff maintains that the decision to retain Faith Ball instead of him in the programmer/analyst position was impermissibly based upon consideration of his age (54) vis-à-vis hers (30).[2]

## Discussion

### 1.  Summary Judgment Standard

The entry of summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and

---

[2]Following his discharge, plaintiff's duties were allocated among those Information Services employees who were unaffected by the June 22, 1993, RIF; namely, Faith Ball, Richard Rogers (35), then Supervisor of Information Services, and David Spring (49), then Manager of Information Services.

3

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.  Thus, the role of summary judgment among the array of pretrial devices is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993).

Among the guidelines to be followed by the court in assaying the summary judgment record is "to interpret the record in the light most hospitable to the nonmoving party, reconciling all competing inferences in that party's favor." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (citation omitted). "Nonetheless, a party contesting summary judgment must offer the court more than posturing and conclusory rhetoric." Id. (citations omitted).

"Moreover, summary judgment may be appropriate '[e]ven in cases where elusive concepts such as motive or intent are at issue, . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994) (quoting Medina-Munoz v. R.J. Reynolds

4

<u>Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990)).


<u>2.  The ADEA Claims</u>

    <u>a.  Disparate Treatment</u>

    "Absent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove [his discrimination] case by resort to a burden-shifting framework."  <u>Smith v. F.W. Morse, Inc.</u>, 76 F.3d 413, 421 (1st Cir. 1996) (citing <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-56 (1981); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)).  That noted,

> [o]n summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.

<u>Fennell v. First Step Designs, Ltd.</u>, 83 F.3d ___, ___, No. 95-2294, 1996 WL 242333, at *9 (1st Cir. May 15, 1996) (citing <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 827 (1st Cir. 1991), <u>cert. denied</u>, 504 U.S. 985 (1992)); <u>see also</u> <u>Pages-Cahue v. Iberia Lineas Aereas de Espana</u>, 82 F.3d 533, 536 (1st Cir. 1996) ("In ADEA discrimination lawsuits, plaintiffs bear the ultimate burden of proving that their ages were the determinative factor in their discharge, 'that is, that [they] would not have been

5

fired but for [their] age.'" (quoting <u>LeBlanc v. Great Am. Ins.</u>
<u>Co.</u>, 6 F.3d 836, 842 (1st Cir. 1993), <u>cert. denied</u>, ___ U.S. ___,
114 S. Ct. 1348 (1994)) (alteration in <u>Pages-Cahue</u>) (other
citation omitted); <u>Carson v. Bethlehem Steel Corp.</u>, 82 F.3d 157,
158 (7th Cir. 1996) (per curiam) ("The central question in any
employment-discrimination case is whether the employer would have
taken the same action had the employee been of a different [age]
. . . and everything else had remained the same." (citations
omitted)).

Accordingly, for the purposes of the instant motion for
summary judgment, the court assumes arguendo both that plaintiff
is able to satisfy the ADEA prima facie case[3] and further that

---

[3]The ADEA prima facie showing requires such plaintiffs to
demonstrate

> (1) that he or she fell within the ADEA's
> protected group--that is, more than forty years of
> age; (2) that he or she met [the employer's]
> legitimate performance expectations; (3) that he
> or she experienced adverse employment action; and
> (4) that [the employer] did not treat age
> neutrally or retained younger persons in the same
> position.

<u>Pages-Cahue</u>, <u>supra</u>, 82 F.3d at 536 (citations omitted); <u>accord</u>
<u>O'Connor v. Consolidated Coin Caterers Corp.</u>, ___ U.S. ___, 116
S. Ct. 1307, 1310 (1996) (ADEA "does not ban discrimination
against employees because they are aged 40 or older; it bans
discrimination against employees because of their age, but limits
the protected class to those who are 40 or older"); <u>Carson</u>,
<u>supra</u>, 82 F.3d at 159 ("That one's replacement is of another
. . . age may help to raise an inference of discrimination, but
it is neither a sufficient nor a necessary condition." (citing

defendant has stated a satisfactory, nondiscriminatory reason--declining business conditions and a position redundancy in the Information Services department--for plaintiff's discharge.  With such assumptions understood, the "ultimate burden" now "falls on the plaintiff to show that the [defendant's] proffered legitimate reason is in fact a pretext and that the job action was the result of defendant's [age discrimination] animus."  Fennell, supra, 83 F.3d at ___, 1996 WL 242333, at *9 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993); Mesnick, supra, 950 F.2d at 827-28); Carson, supra, 82 F.3d at 159 ("[t]he question . . . is whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground").

"There is little doubt that an employer, consistent with its business judgment, may eliminate positions during the course of a downsizing without violating [the ADEA] even though those positions are held by members of protected groups . . . ."  Smith, supra, 76 F.3d at 422 (citing cases).  "[A]n employer can hire or fire one employee instead of another for any reason, fair or unfair, provided that the employer's choice is not driven by

---

Burdine, supra, 450 U.S. at 248; McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 279 & n.6 (1976))).

7

[age] . . ., or some other protected characteristic."  Id.
(citing, inter alia, Freeman v. Package Mach. Co., 865 F.2d 1331,
1334 (1st Cir. 1988)) (ADEA case).  Thus, "[a] disparate
treatment claimant bears the burden of proving that [he] was
subjected to different treatment than persons similarly situated
'"in all relevant aspects."'"  Byrd v. Ronayne, 61 F.3d 1026,
1032 (1st Cir. 1995) (quoting Smith v. Status Computer, Inc., 40
F.3d 11, 15 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S.
Ct. 1958 (1995) (quoting Dartmouth Review v. Dartmouth College,
889 F.2d 13, 19 (1st Cir. 1989))).

In opposition to defendant's motion, plaintiff marshals five
arguments to embolden his charge.[4]  Four of the five arguments
are either irrelevant to the disparate treatment discrimination
alleged or fail to identify why plaintiff's termination was a
consequence of impermissible age animus.  See Plaintiff's
Objection at 3-7, 8-9.  Consequently, whether plaintiff's case
can withstand defendant's summary judgment onslaught depends upon
the strength of the argument, and its corresponding record
factual support, that he was not treated "age-neutrally" within
Information Services and that a younger employee was chosen over

---

[4]Plaintiff additionally argues that defendant is liable
under a disparate impact analysis; however, such argument will be
further addressed infra.

8

him to remain as Kingsbury's programmer/analyst.

Plaintiff presents four pieces of evidence which, taken together, are alleged to demonstrate Kingsbury's discriminatory animus and use of age-based considerations when it determined that plaintiff was to be discharged and Ms. Ball was to be retained. Such evidence consists of: (1) his June 21, 1993, discharge letter; (2) his expert's statistical Data Analysis of Kingsbury Employment Records; (3) the pre-April 1993 seniority policy at Kingsbury; and (4) the affidavit of Bruce Van Broklin. The court has further considered plaintiff's own deposition testimony, appended to defendant's motion, as part of the summary judgment analysis.

The June 21, 1993, discharge letter seems to be pretty standard fare, and evinces no hint of discriminatory animus on Kingsbury's part. Kingsbury's decision to bifurcate its policy on employee retention and differentiate between hourly and salaried employees is similarly without a discriminatory aura. The timing of the change, some two months prior to plaintiff's discharge, does not alter this conclusion. Changes in the company's layoff practice and the creation of an age-based early retirement program do not, in and of themselves, forebode a sinister discriminatory intent on Kingsbury's part. See Schuler

9

v. Polaroid Corp., 848 F.2d 276, 278 (1st Cir. 1988) (ADEA "does not forbid treating older persons more generously than others").

The Van Broklin affidavit is of greater potential relevance to any ADEA claims Mr. Van Broklin may assert against Kingsbury than the instant claim asserted by Tucker. This is so due to the simple fact that the statements therein attributed to Richard Whipple, Executive Vice President of Kingsbury, see Van Broklin Affidavit ¶¶ 7-8, have little, if any, direct relevance to plaintiff's ultimate discharge. Mr. Whipple has (1) "never overseen the operations of the information systems department in any way, including during the [reduction-in-force] of June 22, 1993," Affidavit of Richard Whipple ¶ 4 (attached to defendant's Reply Memorandum), (2) "never made any employment decisions regarding Mr. Tucker," id. ¶ 7, and (3) "played no part whatsoever in Mr. Spring's decision to lay off [plaintiff]," id. ¶ 8. As applied to the circumstances of the case at bar, this evidence is simply not probative. But see Woodman v. Haemonetics Corp., 51 F.3d 1087, 1094 (1st Cir. 1995) (statement of corporate employee may provide cogent evidence in ADEA suit if declarant was directly involved in RIF and substance of statement concerns matters within scope of his employment).

The final piece of evidence submitted by plaintiff is the

10

statistical analysis of his expert, Dr. Marvin Karson, regarding

Kingsbury's work force reductions between September 1986 and June

1994.[5]  As it pertained to the reduction wherein plaintiff was

laid off, Dr. Karson's review of the data "leads to the

conclusion that age discrimination occurred . . . due to the

disparate impact . . . on the 40 and over age group."  Report of

Marvin Karson, Ph.D., at 9 (attached to Plaintiff's Objection as

Exhibit 2).  Dr. Karson testified at his deposition about how he

drew such conclusion.

> Q.  Okay.  What is your definition of age
> discrimination?
> . . . .
> A.  My sense of age discrimination in this
> setting would be if there was a -- if the data
> showed that there was an adverse impact on the 40
> and over age employees.  By adverse impact, if I
> could show that there was a significant
> statistical effect in some -- if there is a
> statistical difference between treating the over
> 40 age group and the under 40 age group.
> Q.  Okay.  So I'm clear on -- I want to make
> sure I'm clear.  To you, adverse impact equals age
> discrimination if you're talking about the over
> 40/under 40 categorization of people?
> A.  As a way to categorize, not -- certainly
> not, you know, as a legal definition, but as a
> working definition for me.
> Q.  Okay.  So when we see in your report, for

---

[5]Dr. Karson divides the various reductions in force that occurred at Kingsbury over such time period into five groups: A (9/27/86-11/28/88); B (2/25/88-3/14/90); C (3/19/90-3/19/92); D (9/16/91-9/16/93); and E (6/22/93-6/22/94).  Plaintiff's layoff took place during the time period encompassed by group E.

11

example, the conclusion that age discrimination occurred in RIF E, you're not giving your legal opinion as to whether or not age discrimination has occurred in this case, are you?

A. That's correct. I'm saying that I found a statistically significant effect due to age on the -- from the terminations on that class.

Deposition of Marvin Karson, Ph.D., at 91-92 (attached to Defendant's Motion as Exhibit 7). When asked at a later time during his deposition about his working assumptions in undertaking the data analysis, Dr. Karson testified as follows:

Q. Okay. Did you assume that the decision making at Kingsbury as -- in RIF E as to who got laid off and who didn't was the same for all departments?

A. It's irrelevant. I -- it's irrelevant to me.

Q. So it wouldn't have mattered to you whether there was one across-the-board procedure for selecting layoff -- people for layoff, or whether instead there were -- layoff decisions were made by department?

A. Yeah. My assumption is that -- maybe not my assumption, but my approach is to deal with this on a company-wide basis.

Q. So your answer to my last question was yes? . . . It would not have mattered to you whether it was done one decision making procedure across the company, or whether the decision making was done department by department, different procedures in each department?

A. It wouldn't have affected what I did because I was interested in dealing with the company as a single unit.

Id. at 182-83.

Dismissing the fact that Dr. Karson's conclusions address

12

disparate impact, rather than disparate treatment,[6] his report fails to create a triable issue due to the stark nature of the results. "'Without an indication of a connection between the statistics,' the practices of the employer, and the employee's case, statistics alone are likely to be inadequate to show that the employer's decision to discharge the employee was impermissibly based on age." LeBlanc, supra, 6 F.3d at 848 (quoting Gadson v. Concord Hosp., 966 F.2d 32, 335 (1st Cir. 1992)).

At bottom, plaintiff's complaint is little more than an honest dispute over the outward merits of a managerial decision. Although "an employer who selectively cleans house cannot hide behind convenient euphemisms such as 'downsizing' or 'streamlining,'" Smith, supra, 76 F.3d at 422, nondiscriminatory business decisions are beyond the legitimate purview of the courts, Fennell, supra, 83 F.3d at ___, 1996 WL 242333, at *11 ("Courts may not sit as super-personnel departments, assessing

_____

[6]As to plaintiff's statistics-based argument in support of the disparate treatment claim, the court notes that "the central focus [in a disparate treatment case] 'is less whether a pattern of discrimination existed [at the company] and more how a particular individual was treated, and why.'" LeBlanc, supra, 6 F.3d at 848 (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 156 (1st Cir. 1990)) (second alteration in LeBlanc). But see Furr v. Seagate Tech., Inc., 82 F.3d 980, 987 n.4 (10th Cir. 1996) ("disparate impact may be evidence of intentional discrimination in certain cases").

13

the merits--or even the rationality--of employers' nondiscriminatory business decisions." (quotation omitted)).

. "Whether or not trimming the fat from a company's organizational chart is a prudent practice in a particular business environment, the employer's decision to eliminate specific positions must not be tainted by a discriminatory animus." Smith, supra, 76 F.3d at 422 (citations omitted).

When plaintiff was asked at his deposition whether he believed someone else should have been laid off in June 1993, he testified,

> A. Yes.
> Q. Who do you believe should have been laid off instead of you?
> A. Faith.
> Q. Why do you believe that?
> A. Seniority and also . . . experience, although we worked on different projects, we both had approximately the same experience. The same ability, let's say.

Tucker Deposition at 59 (attached to Defendant's Memorandum of Law as Exhibit 3). However, plaintiff's manager, David Spring, has stated,

> 4. I have known Byron Tucker for over 30 years, during which time I have worked along side him in manufacturing and then in information systems.
> 5. I was his immediate supervisor in information systems for 6 years and, for the last eight years he was employed at Kingsbury, he reported to me, through another immediate supervisor.
> 6. Several months before the June 22, 1993

14

reduction in force ("RIF"), I thought that a RIF in the information systems department might occur. As a result, I evaluated everyone in the department on 42 different criteria. I numerically rated every employee on a scale from 1 to 10, 10 being the highest.

7. After I did this evaluation Jim Koontz, President and CEO of Kingsbury, called me into his office. He told me that Kingsbury was going to eliminate one of the two programmer analyst positions held by Faith Ball and Byron, in light of the poor business conditions of the company. He told me that I had to decide which programmer analyst should be laid off.

8. I had previously given Byron Tucker a total of 109 points and Faith Ball a total of 119 points in my numerical ratings . . . of the programmer analysts . . . , as the programmer analyst was the only information systems department position affected in the June, 1993 RIF. Based on the comparative numerical ratings I had done of each of them, it was my decision that Faith Ball should be retained and Byron should be laid off. It was my conclusion that Faith Ball possessed a greater level of expertise that would be needed in the department in the future. I explained in more detail my reasons in a memorandum to Jeff Toner dated September 14, 1993 . . . .

9. As I had already analyzed all of the positions in the information systems department and, as its manager, I was aware of its future needs, I was able to inform Koontz during that meeting of my decision that Byron should be laid off and Faith Ball should be retained.

10. My decision to select Byron for lay off as part of the June, 1993 RIF had absolutely nothing to do with his age.

Affidavit of David N. Spring ¶¶ 4-10 (attached to Defendant's Memorandum as Exhibit 2).

Insofar as this court will attempt to assess neither the merits nor the rationality of an employer's business decisions,

15

see <u>Mesnick</u>, <u>supra</u>, 950 F.2d at 825, the question is whether such business decision was based upon the prohibited consideration of age, <u>see</u> <u>Hazen Paper</u>, <u>supra</u>, 507 U.S. at 610 ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome."). Upon review of the entire state of the evidence before the court on summary judgment, the court herewith finds and rules that no reasonable juror could conclude that age-based animus tainted Kingsbury's decision to dismiss Tucker. Accordingly, defendant's motion for summary judgment as to disparate treatment liability under the ADEA must be and herewith is granted.

### b. Disparate Impact

Plaintiff seeks, should the argument on disparate treatment discrimination fail, to recover on the alternate theory of disparate impact. The availability of such theory of liability under the ADEA is, at this date, open to question.

The Supreme Court has "never decided whether a disparate impact theory of liability is available under the ADEA," <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993) (citing <u>Markham v. Geller</u>, 451 U.S. 945 (1981) (Rehnquist, J., dissenting from

16

denial of certiorari)), although several members of the Court have intimated the likely answer, id. at 618 (noting that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA" and emphasizing that "nothing in the Court's opinion should be read as incorporating in the ADEA context the so-called 'disparate impact' theory of Title VII") (Kennedy, J., concurring). Such nondecision notwithstanding, the vast majority of the circuit courts of appeal that have addressed the issue have taken the Hazen Paper musing, in conjunction with the ADEA's legislative history, to indicate that disparate impact liability theories are not to be entertained in ADEA litigation. Compare Furr, supra, 82 F.3d at 986 ("disparate impact claims are not cognizable under the ADEA"); Ellis v. United Airlines, Inc., 73 F.3d 999, 1007 (10th Cir.) (analyzing legislative history and expressly ruling that disparate impact claim not recognized under ADEA), cert. denied, ___ S. Ct. ___, 64 U.S.L.W. 3818 (1996); DiBiase v. SmithKline Beecham Corp., 48 F.3d 719, 732 (3d Cir.) ("it is doubtful that traditional disparate impact theory is a viable theory of liability under the ADEA"), cert. denied, ___ U.S. ___, 116 S. Ct. 306 (1995); EEOC v. Francis W. Parker Sch., 41 F.3d 1073, 1077 (7th Cir. 1994) ("decisions which are made for reasons independent of age but which happen to correlate with age are not

17

actionable under the ADEA"), <u>cert. denied</u>, ___ U.S. ___, 115 S. Ct. 2577 (1995) <u>with</u> <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1473 (9th Cir. 1995) ("'A plaintiff alleging discrimination under ADEA may proceed under two theories of liability: disparate treatment or disparate impact.'" (quoting <u>Rose v. Wells Fargo & Co.</u>, 902 F.2d 1417, 1421 (9th Cir. 1990)). <u>Cf.</u> <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989, 1004 (5th Cir. 1996) (en banc) ("The world will not come to an end, nor will our system be in peril, because ADEA plaintiffs face a different and higher burden than Title VII plaintiffs.") (DeMoss, J., concurring in part and dissenting in part).

Some four years <u>prior</u> to <u>Hazen Paper</u>, the First Circuit noted, "in the context of cases involving reduction in force, this Court has glossed the elements of the <u>Loeb [v. Textron, Inc.</u>, 600 F.2d 1003 (1st Cir. 1979] <u>prima facie</u> case to enable a plaintiff to show . . . that his employer' facially neutral actions had a significant discriminatory impact on members of the protected class." <u>Hebert v. Mohawk Rubber Co.</u>, 1104, 1110 (1st Cir. 1989) (citing <u>Holt</u>, <u>supra</u>, 797 F.2d at 37-38). Three subsequent First Circuit cases have addressed the "impact" issue, if only in passing. <u>See</u> <u>Graffam v. Scott Paper Co.</u>, 60 F.3d 809 (Table), 1995 WL 414831, at *3 & n.1 (1st Cir. July 14, 1995) (assuming arguendo that district court correctly held ADEA

18

supports disparate impact theory, but noting doubt expressed by Hazen Court and trend in Third and Seventh Circuits); Das v. Ciba Corning Diagnostics Corp., 993 F.2d 1530 (Table), 1993 WL 192827, at *3 n.2 (1st Cir. June 8, 1993) (refusing to read a disparate impact theory of liability into plaintiff's complaint and expressly noting that the "Court has not recognized a 'disparate impact' theory of liability under the ADEA"); Holt v. Gamewell Corp., 797 F.2d 36, 37 (1st Cir. 1986) (assuming, without discussion, the applicability of discriminatory impact theory in ADEA action).

Noting the decision in Caron v. Scott Paper Co., 834 F. Supp. 33, 38 (D. Me. 1993) ("Both the language of the statute and the case law support the use of disparate impact theory under the ADEA."), but acknowledging the weight of authority otherwise, see Plaintiff's Objection at 9, plaintiff argues that "Defendant's lengthy analysis of this issue is premature," id. Insofar as disparate impact is advanced by plaintiff as an alternate theory of liability, the court would be hard-pressed to concur that defendant's summary judgment attempt to neutralize such argument is premature.

Plaintiff's failure to adequately parry defendant's thrust could be construed as a waiver of his disparate impact theory of liability. However, assuming arguendo the applicability of such

19

theory of liability to an ADEA case, the court finds and rules that plaintiff has failed to state a prima facie case of disparate impact under the ADEA. See <u>Caron</u>, <u>supra</u>, 834 F. Supp. at 38 (plaintiff must "1) identify the specific employment practices or selection criteria being challenged; 2) show disparate impact on the basis of age; and 3) show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their age") (citing <u>Wards Cove Packing Co. v. Atonio</u>, 490 U.S. 642 (1989); <u>Rose</u>, <u>supra</u>, 902 F.2d at 1424). As in the disparate treatment claim, plaintiff's evidence fails to identify <u>age</u> as the motivating and principal factor that predetermined his discharge. In consequence of same, plaintiff is unable to establish a prima facie case of disparate impact. Defendant's motion for summary judgment on said theory is accordingly granted.

<u>Conclusion</u>

For the reasons set forth herein, defendant's motion for

20

summary judgment (document 10) is granted in its entirety.

Judgment shall be entered for the defendant.

     SO ORDERED.


                             _____
                             Shane Devine, Senior Judge
                             United States District Court

June 19, 1996

cc:   Timothy A. O'Meara, Esq.
      James M. Saffian, Esq.